Map tin, J.
delivered the opinion of the Court. . . , .. . ... The petition states the detendant to be mdebt-ed to the plaintiff for the balance of an account cun-eut, between the partieb, which is annexed.
The answer admits the debt stated, but avers that on the; days of the dates of the first and last items of the account and during the whole intermediate time, the defendant was a copartner in trade, with James Sloan, of Liverpool, in Great Britain, and established at Charleston, S. C. as a branch of the house 'of Sioane &. M’Millan, of Liverpool, as the plaintiff at the time well knew ; and that afterwards, viz. about nine months after *677 the date of the last item, in said account current, ... the partnership still subsiáting, a commission óf bankruptcy was awarded, according to the laws of England, against the defendant as a merchant, shop-keeper and dealer, in Liverpool aforesaid, and sixty days after the issuing of said commission, he obtained his discharge or certificate in due form.
The plaintiff demurred, and the defendant hawing joined in demurrer, the District Court gave judgment for the defendant and the plaintiff appealed.
-The question for the solution of this Cojirt is this: . .
Is a certificate of bankruptcy, duly obtained in England, where, it is admitted, it works a com-píete discharge of antecedent debts, a bar to a suit brought in this State, by a person residing in the United States, and for a debt contracted there before the bankruptcy ?
The affirmative is supported on the ground, that the laws of commerce are a branch of the laws of nations ; commerce being carried on amongst mankind for their common benefit : hence wherever the property of an insolvent debt- or rhay be found, it becomes, it js said, the common pledge of all his creditors,/whether natives *678 or aliens : amidst the wreck of.his fortune, all his creditors must fare alike ; bankruptcies, therefore-, and consequently all questioi* concerning the condition of the bankrupt are to be determined bv the laws and customs of the country, where the bankruptcy was declared : the legal forms of that country alone are to be pursued and exclusively adopted, and all the creditors must submit to all the conditions prescribed by the lex loci, in the «ame manner, as all the creditors of a succession are bound to the magistracy of the place where it is opened. . The discharge which ensues is aid to be legal, irrevocable and entire, and to preserve these characteristics, even in foreign countries, with respect to creditors who reside there. A maxim of the laws of nations is invoked, according to which, all judgments and acts, of the civil power, altho’ emanating from a foreign authority, are to be respected and binding in every country ; states owing this deference respectively to each other as to the laws which they have made in their own territories, and as to the application which thev have made of them to individuals living under their dominion : neither reason nor political convenience permitting that a man, who is absolved in one place, should be repeated guilty in another, nor that a debtor, liberated by the laws and the tribunals of the place, where he had his • domicil,- should again remain a debtor, and liable to process if he should happen to remove to aiiq- *679 ther place, thereafter. Cooper's B. L. App. 29, 32.
Such are said to be the leading principles of the laws oi France', on'the subject oí baiikruptc^y. They were recognized by the Supreme Court of Pennsylvania, in the case of Millar vs. Hall, in 1788, 1 Dallas, 228s. “ It is true, says C. J. M‘Kean, ” “ though the laws of a particular country have in “ themselves no extraterritorial force, no coercive “ operation,,yet by the consent of nations, they “ acquire an influence and obligation, and in many “ instances become conclusive throughout the “ world. Acts of pardon, marriage and divorce “ made in one country are received as binding in all “ countries.” He held that the insolvent lay of a neighbouring state should enjoy that weight, in the courts of Pennsylvania, which it naturally derived from general convenience, expediency, justice and humanity ; “ for mutual conveniency,” added he, “ policy, the consent of nations and the “ general principles of justice form a code which “ prevades all nations and must be every where “ acknowledged and pursued.”
Livingston, J. in the case of Van Raup vs. Arsdale, 3 Caines 154, expressed his private opinion'(though he concurred with an opposite judicial one) that a cessio bonorum, under the laws of, a State in which the debtor had his permanent re- *680 ought to operate as his discharge, from his cred¡tors in every part of the vvorid.
This subject is, however considered, in a very different £nd quite opposite point of view in the courts of Great Britain, in a case, which is said to have settled the law on this question, Smith vs. Buchanan & al. 1 East, 10 : the Court of King’s Bench there holding that a discharge in Maryland was no exoneration from a British debt contracted prior to the bankruptcy. Lord Kenyan saying “ it is impossible to assert that a con “ tract made in one country is to be governed by , “ the laws of another, it might as well be con"tended that if the State of Maryland had enacted “ that no debts due from its own subjects, to the “ subjects of England, should be paid, the plain- “ tiff should have been bound by it. This is the “ case of a contract lawfully made by a subject-, “ in this country, which he applies to a court “ here to inforce : and the only answer is, that a “ law has been made in a foreign country, to dis- “ charge these defendants from their debts, on “ condition of their having relinquished all their property to their creditors. But, how is that “ an answer to a subject of this country, suing “ on a lawful contract made here ? How can it “ be pretended that he is bound by a condition to “ which he has given no assent, either express or " implied.
*681 It is not easy to arrive at a clear understanding of this branch of the law, without á close examination of the manner in which it has been expounded by courts of justice abroad and in these states. And as the certificate in the present suit was obtained in Great Britain, it will be peculiarly useful to examine what is the effect of a discharge under the bankrupt laws in that country.
It seems that it once was a point admitted (and the idea does not appear to have as yet been exploded) that the bankrupt laws of Great Britain had no effect out of the isle. Lord Talbot and Lord Mansfield were of this opinion : a certificate, under a commission in England will not bar a debt contracted in the British West Indies, where there are separate laws and judicatures, Waring vs. Knight, Cook's B. L. 373. Id. 522, Beawes's Lex. Merc. 543. It has been determined in a case from Virginia, that the English bankrupt laws do not extend to the plantations. Cleve vs. Mills, Cook's B. L. 370, and in James & al. vs. Allen, 1 Dallas 188, Ch. J. Shippen said “ the bankrupt laws of England were never “ supposed to extend here (Pennsylvania) so as “ to exempt the persons of bankrupts from being “ arrested.”
In 1779, Lord Mansfield held that if a bankrupt has money due to him out of England, as in St. Kitts or Gibraltar, the bankrupt laws so far *682 yest the 'debts due him, in his assignees, that the debtors in these places shall not turn them round by saying they are accountable to the bankrupt: but, if before the bankruptcy the money be bona fide attached in those places, the asssignees shall not recover the debt.
Towards the middle of the last century (1744) in the case ex parte Burton, 1 Atkins 255, which was that of a debt contracted before the debtor’s cessio bonorum., in Holland, Lord Hard-wicke observed that the cession, in the .country in which it was made, discharged the person, but not the future property of the debtor. This has been considered as implying the opinion of the Chancellor to be, that if it had discharged the future property also, the decision would have been a different one, and consequently the bankrupt law of Holland would have been taken as the guide of the court. This reasoning is far from being conclusive. ■
In the case of Ballantine vs. Golding, in cited in Cook's B. L. Lord Mansfield is said to have holden as a general principle that “ where “ there is a discharge by the law in one country it " will be a discharge in another.” But, as in weighing the decision of courts, we much rather attend to what is done, than to what is said, we cannot conclude that his lordship admitted this principle lato sensu : for this is quite inconsistent with his decision, in the case of Waring vs. *683 Knight, already cited, in which he held a . charge in England not to be any in the West Indies. In considering the facts of this case (Ballantine vs. Golding) we find all that it was neces-saiy, and therefore all that it was intended, to decide, is that a discharge in the country where the debtor resides, contracts the debt and is discharged, is a discharge elsewhere. Golding resided, contracted the debt and was discharged in Ireland. In the casi of Quin vs. Keefe, 2 H. Bl. 553, the court noticed the difference between a certificate granted out of the country, in which the debt was created and one granted in that country, and refused relief on a motion to discharge the Nail : it appeared that the debt had been contracted in England and the certificate obtained in Ireland : and the same consideration likely induced the judgment of the court in the case of Smith vs. Buchanan & al. already cited, in which the debt was contracted in England and the certificate obtained in Maryland.
From a view of the English authorities it fol-. lows that the tribunals of that country, do not allow the discharge of a bankrupt, obtained abroad, tó bar a debt created in England towards a British subject. '
W e cannot find that there ever was a decision of the Supreme Court of the United States on the question under consideration. It was twice sent *684 Up for finai determination, in that tribunal. In the one case, the cause went off on another ground Emery vs. Greenwood, 3 Dallas 369 : in the other, the Court was of opinion that the question was informally presented. Dewhart vs. Coulthaid, id. 409.
In the Circuit Courts of the United States, it appears to have been thrice determined. In Massachusetts District, in Emery vs. Greenwood, 3 Dallas 369, the parties were both citizens of that district, and the debt had been contracted there : the defendant afterwards removed his domicil to Philadelphia, where he obtained a legal discharge : being afterwards occasionally in Boston, he was sued for the old debt and pleaded his Pennsylvania discharge : the Court, presided by Iredell, J. circumscribed the operation of the discharge to the State, in which it was given. A different decision.is said to have taken place in the Rhode-Island district, the Court being presided by Wilson, J. id. in nods In the Pennsylvania district, the Court presided by Washington, J. supported the opinion of Iredell, J. saying that a defendant claiming a discharge under a certificate of bankruptcy, obtained in a foreign country, should shew that the debt was created there. Green vs. Sarmiento: there is not any report of this case : it is cited from Cooper’s Justinian, 623.
*685 In the State of Massachusetts, a discharge, under the insolvent laws of another State, has often been holden to afford no protection against a prior debt contracted in the former State. In the case of Proctor vs. Moore, 1 Mass. T. R. 198, the defendant having his domicil in Connecticut, being occasionally in Massachusetts, gave his note to the plaintiff, and returning home was afterwards discharged by the legislature of Connecticut. Being now sued in Massachusetts, he sought to avail himself of the discharge, but the Court held his plea bad, as it did not shew that the contract was made, and the plaintiff resided, in Connecticut, tor unless he was an inhabitant of Connecticut, at the time of the contract, the proceedings of the legislature could not bind him : which the Court added they had repeatedly decided.
The question has met with the same determination in the State of New-York. In the case of Smith vs. Smith, 2 Johnson, 235, the defendant, an inhabitant of Rhode-Island, being on a visit, in Massachusetts, had given his note to the plaintiff, and returning home had taken the benefit of the insolvent laws of Rhode-Island. He was sued in New-York, and the Court held that the discharge could be no bar, out of the State,of Rhode-Island. The student will notice this as a much stronger case than any that have been cited. Hitherto wc have seen courts protecting their own citizens of *686 persons-trading or reading in the State, against discharges obtained abroad ; here is a court ex-tdusively confining the operation of bankrupt laws to the country in which they were enacted : even when the creditors did not give credit, or resided in the State.
In. the case of Van Raugh vs. Arsdale, 3 Caines 154, the Court said “ the insolvent laws of “ another State, Cannot take away the rights of a “ citizen of this State to sue here, upon a contract “ made here, and which is binding by our laws.”
The first adjudication that is recorded, as having taken place in Pennsylvania, on the subject under consideration,-is to be found in the case of James & al. vs. Allen, Chief Justice Shippen, declared it to be the opinion of the Court, that insolvent laws had never been Considered as binding, out of the State, that made them. 1 Dallas 191.
ShoRtly after, was decided the case of Millar vs. Hall, 1 Dallas 128, cited in the beginning of this opinion. The defendant resided in Baltimore and was discharged from his debts, under the laws of Maryland. He had received the money, which was the ground of the debt, in Baltimore, but the agreement, under which he - had received it took place in Pennsylvania, where the plaintiff had his domicil, and where the suit was brought, and it was holden that his certificate protected him. *687 This decision is apparently at variance with given in the preceding one, but only apparently so. The law of Maryland according to the first, is not binding out of that State : in the latter case, the decision is that the law of Maryland is binding upon the debt created there, and justly destroys it, eodem modo quo construitur, des-truitur. It arose and was dissolved under one law, and being dissolved by the law under which it was created, it must be recognised every where else as rightfully dissolved. It is true, in delivering the opinion of the Court, C. J. M’Kean used a different, but not an opposite or contrary reasoning. But in the decisions of courts we should rather attend to what is done by the Court, than to what is said by the organ, through which this judgment is conveyed.
In the case of Thompson vs. Young, 1 Dallas 294, and Donaldson vs. Chamberlain, 2 Dallas 100, the defendants being residents of Maryland, and having taken the benefit of the insolvent laws of that State, where protected by the courts of Pennsylvania. In the first case the debt was created in Maryland, as appears from the report and we conjecture that, this was the case in the othér, as the Court grounded their decision on the authority of Millar vs. Hall, from, which it is probable the case was a parallel one.
In the case of Haines vs. Mandeville, 2 Dallas 256, both parties were British, and the debt creat *688 ed and the certificate obtained, in the common country and the defendant was protected by the courts of Pennsylvania ; and under similar circumstances, the parties being French, the defendant was likewise protected in that State, in the case of Leclerq vs. Rouchette, cited 1 Dallas 256.
Prom a review of these American cases, and they are alFthose to which we have been able to recur, it appears that relief has ever been extended to bankrupts,, who had been discharged in the country in which the debt was created, no instance occur in which it was denied. In one case only, Proctor vs. Moore, the Court appears to have expected, as an additional requisite, that the plaintiff should also have at the time of the contract his domicil, in the country in which the debt was created.
Comparing the American with British cases, we find no difference in the general conclusion, except in some early decisions, holding the bankrupt laws not to extend to the West-Indies or the American provinces. The courts in England, have, however, so far taken notice of the bankrupt; laws of other countries, as to consider the assignment of bankrupts’ effects in other countries, altho’ in fact made in invitum, and consequently allow assignees, deriving their titles under foreign ordinances, to sue in, England, for debts due to their bankrupts’ estates, Hunt vs. Potts, 4 T. R. 182, *689 192. We find it no where adjudged, that a certi. ficate obtained out of the country, where the debt was created, afforded any protection out of the country in which the discharge was obtained. In Terrasson’s case, on which Mr. Duponceau has favoured the American jurists with the opinion of learned counsel in Paris, we are not satisfied from the statement of facts, that the lawyers con-suited intended that what they said should be construed to extend to debts contracted out of Pennsylvania ; although it must be admitted that the general way in which they argue leads to that conclusion. Cooper’s B. L. App.
We cannot find that in'any case, either in England or the United States, persons not domiciliated in the country, in which the certificate was, obtained/ were bound by the discharge, when the debt was not contracted there. The authority of no adjudged case would support us in solving the question under consideration in the affirmative.
Let us now examine the question according to the ideas of the Civil or the Roman law writers. ' , ■ ,
They all admit, that all business and transactions in . court and out of court, whether testamentary or other conveyance or acts, which are regularly done, according to the laws of the place in which thev take nlace, are valid, also in other *690 countries, even where a different law prevails and where had they been so transacted they would not have been valid. .
This principle, however, must be admitted with some caution.
In testamentary cases, it is also true that the laws of the country where the succession is opened will be binding throughout the world i. e. that if the executor, administrator or curator, dispose of the assets according to the law of the country, he will be protected, even from the .claims of creditors residing abroad. But this is only an elucidation of the principle we have deduced from the British and American cases, viz. that the lex loci of the contract must regulate it throughout the world. If A. contracts with B, in London and B. dies in Paris, where C. proves the will and has letters testamentary, A’s. claim rests bn an express contract with B. in London and an implied one with C. in Paris.; for C. in taking up the execution of the will and possessing him. self with the estate of A. became bound to pay his debts, according to the laws of France : on which the law raises an implied promise to each creditor to pay him what is due to him, according to the lex loci of both places respectively ; but the mode of payment, the order of precedence, the.time, must be regulated in all cases according' to the lex loci of the country in which letters testamentary are, granted.
*691 In the same manner would be regulated ... ° rights of the creditors of a bankrupt, against the syndics, assignees or trustees of the estate. For the'obligation of the syndics, &c. which is the correlative of the rights of each creditor,- is , produced by the implied contract, resulting from the acceptance of the office or trust. In’ considering therefore the original claim of each creditor on the debtor, the law of the place where the contract took place must be the rule ; but in considering the mode of payment, the precedence, the proportion and time of payment, the law of the place wliere the bankruptcy was opened must prevail, because it is the lex loci, the law of the place where the syndics, See. contracted the obligation to manage the estate.
PROceedings in cases of bankruptcies may well be likened to proceedings on successions. Bankruptcies being successions in cases of commercial or civil'death ; but the resemblance stops there, the consequences as to the person or future property of the bankrupt or debtor cannot be explained by any thing in the case of a succession, which is that in which the original debtor has ceased to exist both civilly and naturally.
That the law of the country where the-debt was created must govern the case in the country where the discharge was obtained cannot be denied, The moral obligation becomes a legal one, that is, receives its binding force in foro legis from the *692 lex loci, which eodem mqdo quo construitur eodem modo destruitur. The lex loci is then that which the parties considered as that which was to enforce the obligation of the contract ; it is one to which they gave their assent, they must take it for better and for worse.
But to consider the law of the domicil of the debtor, to be changed at his pleasure, as that which is to govern the case, from the circumstance that the bankruptcy was declared there, and thus to allow one party to chuse the law by which the rights of his creditors are to be regulated, would be manifestly unjust. The debtor might seek some remote corner of the world where one tenth of his creditors, and perhaps one single creditor, might dictate the terms of the discharge. Hence, what, ever may have been said, arguendo, by any judge or counsel, we find no case in which a judge decided that the law of the place, where the bankruptcy was declared, is to be regarded out of it, when that country was not at the same time, that in which the debt was contracted, or the joint domi-cil of both parties, or when the creditor was not an actual party to the proceedings.
In most countries, the bankrupt law is meant to protect the honest, but unfortunate debtor, in the acquisition of future property for his own benefit. Humanity would seem to claim that the laws of all commercial countries should be ancil- *693 larv to each other and that the benign intention the laws of the country, in which a certificate of discharge is obtained, should not be defeated by the tribunals of other countries in which the person or future property of a discharged bankrupt may afterwards happen to be found. But creditors have also rights, which humanity cannot disregard and which legislatures and courts of justice must* protect.
If it were possible that an universal code of commerce could be devised, by which the proceedings, which precede the issuing of a certificate of bankruptcy, should be so regulated as to allow to present and absent creditors an equal opportunity of having their claims attended to and to contest the pretentions of the debtor to his discharge, then could it be with propriety contended that proceedings in case of bankruptcy ought to have the same effect throughout the world, and equally bind the most distant as the next door creditor. But, alas ! very little reflexion must bring the conviction that this is an Utopian scheme. Commerce now embraces the four parts of the world : How is notice to be conveyed to merchants scattered over the surface of the globe ? What length of time must elapse, if the opportunity is afforded,’ as justice requires, to each creditor to establish his right, take notice of, contest and disprove the allegations of the debtor ? Will not the necessary delay defeat the object in view ? *694 How manv creditors must prefer the abandonment °f their rights, rather than incur the,, trouble, vex* ation and expense attending the assertion of them ! If an universal legislature is required to frame this universal law, how are we sure that any thing short of an universal judiciary will prevent partiality in the execution oí it ?
" But, it is asked, shall the unfortunate debtor be ever without relief, shall he pine, and languish ⅛ misery as long as he lives ? The claim of mis* fortune to ease its burden on the shoulders even of the fortunate must ■ be sparingly enforced. Hu-inanity can require no more for the bankrupt, than that, in the country in which he has asserted his claim to relief, and against those to whom he has afforded an opportunity to contest it, his person and future property should be protected. Perhaps it is inexpedient that this protection should extend to a wider circle. It will, in mosteases, afford to the exertions of honest industry a scope ample enough to insure to the honest debtor and his family, a decent support. If the means of launching inte more extensive speculations are lost to him, his misfortune will, in somé dégree, compensate the damage his creditors have sustained, as his example will restrain others from rash enterprises.
Until now, we have considered all bankrupts as persons merely unfortunate, not tainted with fraud, nor chargeable with any indiscretion. *695 The law, however, presumes fraud in all cases bankruptcy. That ol Spain has a particular provision on this respect. Menendez vs. Larionda's Syndics, post 705.
That of France for along time subjected persons, who ceded their goods to their creditors, to ignominy ; in some provinces they were compelled to wear a green cap. Fraud being legally presumed in a bankrupt, the greater part of insolvent are fraudulent debtors : out of those free from fraud, the greater number is perhaps chargeable with rashness and indiscretion. While the law, therefore^ cannot extend' its benign influence to both creditors and debtors, we cannot wonder that it should deny it to those among whom the fraudulent, tire rash, and the indiscreet constitute' a majority.
Feom the best consideration we are able to give to the question under examination we must solve it in the negative, and declare our opinion thatacer-tificate of bankruptcy obtained abroad cannot protect in this State the person or future property- of the debtor, against a claim of a citizen of the U. States, for a debt contracted in the U. States.
This abstract proposition extends itself with more force to the present case, as the certificate was obtained in England, where the tribunals avowedly deny to bankrupts, discharged in other countries, any protection against the claims ©f *696 British credicorg, for debts Contracted in Great Britain. For. from this circumstance, we must con-elude, that the law being thus settled there, little care is taken in proceedings on a bankruptcy to protect the interest of absent creditors. Indeed, in the present case evidence is spread on the record that the proceedings ripened into a discharge in' the short space of sixty days ; a time too short for American creditors to have received, notice arid attended.
A CIRCUMSTANCE has been noticed'by the' Court, from which the defendant meant to place his case in a different point of view, than the one in which the Court think they must consider it. It is stated that the defendant, at the time of the contract, and in the knowledge of the plaintiff, was a partner of Sloane of Liverpool, and kept a branch of the house of Sloane & M’Millan, in Charleston, S. C. from which the inference is intended to be drawn that the debt was created with a British house, and, therefore, with a reference to British laws. In other words,. that the defendant, at the time the debt was created, had his do-micil in Liverpool, when he kept a trading house in Charleston, S. C. and that as the certificate was obtained in the country in which the debtor had a domicil when he contracted the debt, the debt must be dissolved by the effect of the certificate. The partners oí a mercantile house have each his- *697 respective domicil, where they respectively dwell. Otherwise a man might have hjs domicil where he never sat his foot. But, admitting the dómicil of the defendant to have been in Liverpool, still he must faii according to the decisions in Proctor vs. Moore and Smith vs. Smith.
The District Court, in the judgment of this Court, erred in sustaining the defendant’s plea : its judgment must, therefore, be reversed and annulled,
An ,9 this Court, for the reasons aforesaid, doth adjudge and decree that the plaintiff do recover the .sum acknowledged by the defendant to be diie and-claimed in the petition, with interest from the date of the first process and costs.