## Conrey v. Elbert.

Where an agent residing in this State, purchases a bill endorsed on blank, for a non-resident, principal, which is afterwards protested for non-payment, and no discharge has been given by the principal to the agent from any responsibility growing out of the transaction, the latter may consider himself as a creditor of the party from whom he purchased the bill. The provision of the ninth sect. of the stat. of 28 March, 1840, that no citizen of another State shall be hereafter arrested at the suit of a non-resident creditor, except where the debtor has absconded from his residence, does not apply to the arrest of a debtor made by the purchaser of a bill, under such circumstances. *Per Curiam:* He has such an interest in the bill as will entitle him to exercise all the rights of a *bonâ fide* litigant creditor.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. This was an action on a bill of exchange, for $4,500, drawn by *John C. Harrison*, to the order of the defendant, by whom it was endorsed, on *Pearce & Elbert*, of Philadelphia, who accepted, but failed to pay, the bill at maturity. The petition, in addition to the usual allegations requisite to charge the endorser of a bill of exchange, alleges, that the bill sued on was drawn against one hundred hogsheads of sugar, shipped by the drawer to the drawees, who sold the same, and converted the proceeds, which were more than sufficient to pay the bill, to their own use. Plaintiff further avers, that the defendant is a member of the aforesaid firm of *Pearce & Elbert*, and that he had, by falsely representing his firm as rich, obtained credit; and concludes, by praying that the defendant, in case of non-payment, be dealt with as a fraudulent debtor, and required to give bail.

The defendant was arrested on the following affidavit, made by the plaintiff:
" *Peter Conrey, Jr.* declares on oath, that *William T. Elbert* is justly indebted to him in the full sum of $4,500; that said *Elbert* is on the eve of leaving the State permanently, without leaving in it sufficient property to pay and satisfy his said demand; and that he does not take this oath in order to vex the said *Elbert*, but solely for the purpose of securing his demand."

The defendant having been released on giving bond, took a rule on the plaintiff to show cause why the arrest should not be set aside : 1st. Because the plaintiff is not the true and *bonâ fide* holder and owner of the claim on which this suit was instituted, but that said claim belongs in fact to the Bank of Charleston, the plaintiff being an agent for the collection of the same. 2d. Because the affidavit is insufficient and incorrect.

The plaintiff having been ordered to answer certain interrogatories in open court, on the trial of the rule, objected to the right of the plaintiff so to interrogate him, which objection being over-ruled, and a bill of exceptions taken to the opinion of the court, he stated under oath : " That he sent the bill, or draft, on which this suit is brought, to the Bank of Philadelphia, for collection ; that he has ordered it back, and expects to receive it here in the course of a week. He purchased the draft on the 3d of March, 1846, for the account of the Bank of Charleston, of which he is the agent; that it was purchased with funds furnished him by the Bank of Charleston; and the said funds were under no individual control. After purchasing the draft he remitted it to the Bank of Charleston on the 4th of March, 1846, with these remarks in the letter which accompanied it : ' The bill on *Pearce & Elbert* is on a shipment of sugar, invoice

$6000, made under the supervision of *Mr. Elbert*, who endorses the bill.' He did not write any letter to any other person, advising of the said purchase; that he keeps no account in his own name in the Bank of Philadelphia; that funds are placed there by the Bank of Charleston, against which he checks as agent of said Bank; does not know to what account the draft was placed by the Bank of Philadelphia; on deponent's own books it was debited to the Bank of Charleston, but he does not consider the transaction closed until the bill is paid. The bill originated with the deponent, and of course he feels an interest in the termination."

*C. Moïse*, clerk of *Conrey*, testifies that, "the note sued on was bought on the 3d of last March; it was purchased by plaintiff as agent of the Bank of Charleston, for account of said bank, and with their funds; after the purchase the draft was remitted to the Bank of Charleston, through which source they make all remittances. This suit was instituted under direction of the Bank of Charleston, as per letter on file. That plaintiff did not endorse the draft when he remitted it to the Bank of Charleston." Witness could not say whether there was any understanding between the Bank of Charleston and plaintiff, that drafts taken by him, which might be afterwards protested, should be charged to him individually.

The "letter on file,' addressed to *P. Conrey, Jr.* New Orleans," reads thus: "Bank of Charleston, S. C., May 20, 1846. With this you will receive from *Mr. Moïse*, under protest, *Pearce & Elbert's* acceptance of *J. C. Harrison's* draft for $4,500.

You will lose no time in seeing the parties at your end, and obtain payment or security with the least delay and in the best manner possible.

Commending the above to your usual prompt attention, we are, yours,

H. W. TREVOR, *Cashier*."

The rule having been made absolute, and the arrest set aside, the plaintiff appealed.

*Schmidt*, for the appellant. The plaintiff's bill of exceptions embodies the principal legal points on which he relies to reverse the decision of the inferior court, which is manifestly erroneous, for the following reasons:

1st. *Because the facts, which defendant sought to establish, if they were available at all, could only be inquired into on the trial of the cause, and not in this summary manner.*

Article 218, of the Code of Practice, permits the defendant to disprove, in a summary manner, the facts stated by plaintiff to obtain the arrest. This law, enacted for the protection of the personal liberty of the citizen, could never have intended that the defendant, merely because he had been compelled to furnish bail, should have the right to try his cause on the merits upon a rule to set aside the arrest, which would be the necessary result, should this tribunal sanction the doctrine of the inferior court.

Reason alone, independent of precedent, compels us to reject such a conclusion; but if authority be wanting, it will be found in the case of *Welman, Curator, &c.* v. *Connolly*, 2 Martin's Rep. p. 245. It is true that, *that* decision was made in 1812, and is therefore not a construction of art. 218 of the Code of Practice. This, however, is no objection, since the law to which it applies was not only *in pari materia*, but substantially, if not *verbatim*, similar, and the reasoning of the court certainly applies equally to the law now in force.

2d. *Because the law of Louisiana does not permit the defendant to interrogate plaintiff on facts and articles on a rule like this.*

An appeal to the conscience of his adversary, is one of the means recognised by our laws for the protection of the rights of a suitor; but as this privilege, like every other, is susceptible of abuse, the law has thought proper to circumscribe its use. We accordingly find that art. 347, C. P., requires that such interrogatories, if the answers be required by plaintiff, must be annexed to his

petition, and, if by defendant, to his answer. Interrogatories on facts and articles are intended to answer the same purpose as a bill of discovery in an equity court; that is, to enable the party, by probing the conscience of his opponent, to obtain a discovery of facts material to the prosecution or defence of a suit. Story's Equity Jurisp., No. 1483. Ib. Eq. Plead. No. 311.

The analogy of these two remedies seems to hold in other respects, since, in both, it appears to be requisite that a suit should be pending, to which the remedy is auxiliary. Story's Eq. Jur. § 1483.

In this case, there was no issue, the defendant having as yet failed to answer. In mere *interlocutory proceedings*, which do not in the least affect the merits of the controversy, a plaintiff will not be permitted to have recourse to interrogatories. The case of *Swift* v. *Tyson*, 16 Peters. 2, shows the mode and manner in which a bill of discovery is made auxiliary to a defence on a bill of exchange; but neither in that suit, nor in any other which has come under our notice, have we found any thing which warrants the proceedings of the defendant in the present suit. It would be almost as reasonable to admit a bill of discovery in aid of a *demurrer*, or a *plea in abatement* at common law, as to allow of interrogatories on facts and articles to set aside an order of bail.

3d. *Because the defendant has no interest and no right to inquire into the ownership of the note, unless the same is prejudicial to any defence he may have against the real owner.*

The defendant, the payee of the bill sued on, endorsed the same in blank; but such endorsement makes the bill payable to bearer, and gives even an agent the right of suing on it, in his own name. Story on Bills of Exch. § 207. The same principle was recognised by this court, in the case of *Boswell* v. *Zender*, 13 La. 366; and in *Lapice* v. *Clifton*, 17 La. 152.

But, if mistaken in every one of the positions hitherto advanced, the judgment of the inferior court is still erroneous,

4th. *Because the record furnishes no evidence inconsistent with the affidavit of plaintiff.*

If we admit that plaintiff was the agent of the Bank of Charleston—that this draft was bought with the funds of that institution—that it had been forwarded to Philadelphia for collection, for account of the bank, what could such admissions avail the defendant ? The Bank of Charleston, as owner, surely had the right to transfer it to the plaintiff, nay, to give it to him gratuitously if it thought proper, since such power is the accompaniment of ownership. By what right, then, does the defendant constitute himself the guardian of the bank, and undertake to institute an inquiry into the private relations between the Bank of Charleston and the plaintiff? All that the defendant has a right to exact, and this is a right which never has and never will be denied him, is, that the transfer should not be permitted to operate prejudicially to any defence which he would be authorized to set up against the bill of exchange, had the present action been brought in the name of that corporation.

*H. H. Strawbridge*, for the defendant. 1st. The oath of the plaintiff, *Conrey*, that, "*Elbert* is justly indebted to *him*," is contradicted by his own books, letters, clerks, and by his own evidence. The facts alleged to obtain the arrest being also disproved in open court, the defendant was, in accordance with art. 218 of the Code of Practice, properly discharged from custody.

2. The Bank of Charleston is proved to be the true holder and owner of the bill on which suit was brought, and the writ of arrest issued. Now, as the law of 28th March, 1840, § 9, provides " that no citizen of another State shall hereafter be arrested in this State at the suit of a non-resident creditor," an arrest by the bank itself would have been illegal, and the arrest by its agent *Conrey*, under cover of an action brought in his own name on a debt due to his principal, but which he swears to be due to himself personally, is an evasion of the laws. " *Nemo potest facere per alium quod per se non potest.*" *Nemo potest plus juris ad alium transferre quam ipse habit.* Coke Lit. 309.

The judgment of the court was pronounced by

EUSTIS, C. J.  This suit is brought on a protested bill of exchange for $4,500, drawn by *John C. Harrison*, to the order of the defendant, on the house of *Pearce & Elbert*, of Philadelphia. It was endorsed in blank by the defendant, and purchased of him by the plaintiff in New Orleans, as agent for the Bank of Charleston. It was protested for non-payment, and the plaintiff

caused the defendant to be arrested in this suit, which the plaintiff instituted in his own name, and he made the affidavit required by the statute that the debt was due to him.

An application was successfully made in the court below to set aside the writ of arrest, on the ground that the plaintiff was not the true owner of the bill, but that it belonged to the Bank of Charleston, and that the plaintiff was the mere agent of the bank for its collection. From this decision the plaintiff has appealed.

The inhibition of the act of 1840, under which the writ of arrest was set aside by the district judge, is in these words: "That no citizen of another State shall be hereafter arrested in this State at the suit of a non-resident creditor, except in cases where it shall be made to appear that the debtor has absconded from his residence." Act of 1840, *to abolish imprisonment for debt,* s. 9.

This suit is not brought by a non-resident creditor, and it is not denied by the counsel for the defendant that the plaintiff can stand in judgment in this suit, nor that the endorsement of the defendant gives the right to an agent to maintain an action on the bill in his own name.

The affidavit made by the plaintiff is positive and unqualified, and we do not consider this as a case in which the intendment of the statute is sought to be evaded, nor that the disclosures made by the plaintiff weaken the effect of his affidavit. True it is that the bill was brought by the plaintiff as agent for the Bank of Charleston, and that the bank has directed its collection ; but the plaintiff swears that he does not consider the transaction as closed. The relations between the plaintiff and dependant, defendant on the sale of the bill, may or not create a responsibility, from which no discharge has been given by the bank to the plaintiff; and, in this state of things, *in re agendâ*, he is at liberty to consider himself as a creditor of the party from whom he purchased the bill, under representations of the appropiation of a shipment of sugar to its payment, by the house of the defendant, which were not carried into effect. He certainly has such an interest in the bill as will entitle him to exercise the full rights of a *bonâ fide* litigant creditor, and the case does not come within the exception provided in the 9th section of the act before cited.

The judgment of the District Court is therefore reversed, and the rule taken by the defendant to obtain the setting aside of the writ of arrest and the discharge of the defendant discharged, with costs in both courts.*

---

*H. H. *Strawbridge,* for a re-hearing. The question at issue is not what remote interest *Conrey* might have, in case the Bank of Charleston should attempt to make him personally liable, but whether *Conrey* in person was really *Elbert's* creditor. The right of arrest belongs only to the creditor himself. "The arrest is one of the means which the law gives the *creditor* to secure the person of *his* debtor." C. P. 210. An agent may, indeed, arrest the debtor of his principal; but an agent cannot swear that the debt due to his principal is due to himself in person.

But, say the court, the relations between the plaintiff and defendant, dependent upon the sale of a bill, *may or not* create a responsibility, from which no discharge has been given by the bank to the plaintiff, and in this state of things he is at liberty to consider himself as a creditor of the party; he has such an interest in the bill as will entitle him to exercise the full rights of a *bonâ fide* litigant creditor.

The mere possibility of an agent becoming liable to his principal, cannot entitle him to exercise the full rights of an actual creditor, and assume a power greater than the principal himself ever possessed.

The chance of A's becoming, at some future period, the *bonâ fide* creditor of B, cannot authorize the arrest of the latter.

Conrey
v
Elbert.

Could the plaintiff obtain judgment for the $4,500, on a petition setting forth that "he may or not become liable to the bank for that amount," and that, therefore, *Elbert* is really indebted to him?

From the earliest decisions of our tribunals it has been held that, a mere contingent interest does not suffice either to sustain an action or to authorize an affidavit. The very first article of the Code of Practice defines an action to be " the right given to every person to claim judicially *what is due or belongs to him.*" "An action can be brought only by one having *a real and actual interest*, which he pursues; but as soon as that interest arises, he may bring his action." C. P. art. 15.

In *Whetton* v. *Townsend*, 1 Mart. 188, it was decided that, an affidavit for arrest, made before the debt was payable, was bad, and the arrest was dismissed.

In the *Planters' Bank* v. *Lanusse*, 1 Mart. 691 and 695, it was settled, that, an endorser who had not paid his endorsee, cannot be permitted to vote at a meeting of the creditors of the insolvent drawer, and swear that he is a creditor. His own liability may be well settled, but his becoming a creditor of the drawer depends on a future event, viz., his payment of the obligation.

In cases of attachment, generally speaking, it is requisite, as in cases of arrest, that the debt claimed should be actually due. Yet in *Taylor* v. *Drane* 13 La. 62, it was held that " an endorser cannot sue the maker of a note not yet due, on the ground that he endorsed as surety, and that the latter is about to remove with his property, permanently, from the State, before the note becomes due. It is not a~proper case for attachment, as the plaintiff does not show *an existing debt* due to him by the defendant, nor an absolute liability incurred as surety."

"So, in partnerships, an attachment or action cannot be sustained by one partner against another, before a liquidation of the accounts between them, because the plaintiff cannot swear positively to the amount of the debt due to him." *Levy* v. *Levy et al.*, 11 La. 577.

I repeat it again, the question mooted is, who is the true owner of the bill—the real plaintiff in interest? Be it remembered, that the suit is on a bill of exchange; it is not such an action as *Conrey* might have brought in his own right for any contingent or future damage. It is the property in the debt evidenced by the bill, which is in issue. Both cannot be creditors. There is no such thing known to our laws as two creditors of the same debt, unless in the case of creditors *in solido*, which in the present instance is not even pretended. Who then is the real creditor? Had the parties to the bill all failed, who must have been placed on their schedules as its owner? Who would have been entitled to vote for syndic in his own right? Who, in case of a dispute between *Conrey* and the bank, as to the real ownership, would, under the evidence adduced, be entitled io receive the dividends? Who, in case of a counter-claim, opposed by the defendant, could, under that evidence, plead the debt in compensation? Had a creditor of *Conrey* and a creditor of the bank attached or seized the debt, which, in the contest, would have been entitled to the proceeds?

The bare statement of these questions carries the answers on their face, and shows the property in this bill to belong to the bank alone.

If *Conrey* should be ultimately liable to the bank for neglect or mismanagement, it could only be when it had been established that the bank had lost the debt through his fault. Nor could *Conrey*, in his own right, be placed on the schedule, vote for syndic, receive a dividend, plead compensation, or even maintain an action in that right, until he had proved himself formally subrogated to the rights of the bank.

Subrogation could not take place by operation of law, for he is not a surety *for* the defendant nor *with* him, nor an endorser, nor a creditor on any other account. C. C. 2156, 2157.

The real owner of the debt set forth in the affidavit and petition is, beyond doubt or question, the Bank of Charleston, which is not a citizen of Louisiana, nor established or resident here, and not entitled, under the law of 1840, to arrest the defendant in its own right and name.

The suit is, therefore, brought under cover of *Conrey's* name, and the defendant is thus deprived of a defence which he could have set up against the bank itself. By various decisions of our courts, an agent is permitted to sue in his own name; none authorize him, however, to *swear* as the plaintiff has done. But, by the very decisions quoted by the plaintiff's attorney, in such cases the defendant may avail himself of any defence good against the real owner of the claim.

*Benjamin* and *Micou*, for a re-hearing. The question is, whether the arrest of the defendant was in contravention of the law of 1840? From the tenor of the opinion, we infer that the court would not sanction a clear evasion of the law, or, in other words, permit a party, who had no interest in the subject, to lend his name for an arrest, that without his aid could not be made. Let us consider whether such is not the case with the plaintiff.

There is no proof of any interest in the plaintiff. His clerk knew of no guarantee or responsibility resting upon him in the transaction. He purchased the bill as the agent,

and with the funds, of the Bank of Charleston. He did not endorse it; he debited the bank with the amount advanced; and remitted it to the bank, as its property, to use as it pleased. Here ceased his connection with the bill. If it had been paid, he would never have heard of it again. If, after protest, more responsible parties than the defendant had been found in New York, or Philadelphia, some other agent would have been employed to collect it.

A guarantee by an agent is not to be presumed. All the evidence in the case was drawn from the plaintiff and his clerk; and they do not speak of any such responsibility. The plaintiff says: "He does not consider the transaction closed until the bill is paid. The bill originated with deponent, and of course he feels an interest in the termination." His answer is carefully drawn. He had a full opportunity of stating his position in the most favorable light, and if he had any other interest than is here stated it would have been fully explained. The transaction may not have been closed, and yet the plaintiff's agency may have been at an end. He might well *feel an interest* in the bill, without being made richer or poorer by the result of the suit. The mere solicitude of a zealous agent for the interest of his principal, does not constitute such an interest in the subject as entitles the agent to use the thing as his own. The interest regarded by the law, is to be counted in dollars and cents, not tested by the sensitiveness of the feelings. The answer of the plaintiff is then conclusive that, he had no pecuniary interest, even for his commissions, and that no ultimate guarantee or responsibility rested upon him. We submit, therefore, respectfully that, the alternative of even a possible responsibility, growing out of the relations of the parties, referred to in the opinion, is not supported by the evidence. A responsibility which the plaintiff himself would not aver when interrogated, must be considered as not existing. Considering the plaintiff as a mere agent, without pecuniary interest in the matter, he had no right to institute this suit in his own name.

An agent, with general powers, like the plaintiff, may certainly institute a suit. It is an act of administration, often necessary for the preservation of the credit, but he can only sue in the name of his principal. That such is the general rule will not be questioned. Let us examine the apparent exceptions. A factor who contracts in his own name, may sue in his own name upon the contract so made by him. But if the principal has dealt with the party as his debtor, and has taken steps in his own name to recover, the right of the factor to sue ceases. Paley on Agency, p. 282, and note, citing *Sadler* v. *Leigh*, 4 Camp. 195. An agent may sue on a policy of insurance, issued in his own name, because he is a party to the contract. Ibid, p. 283. The possession of a factor, gives him the right to bring an action of tresspass or trover, for injuries affecting his possession. Ibid, p. 284.

The point is discussed by Judge Story, in his Treatise on Agency, note to § 102. After stating that Chitty had laid down the rule rather too broadly, he intimates that the agent cannot sue in his own name, except when the law considers him a party to the contract.

The holder of a promissory note endorsed in blank may sue, because the law implies a promise to pay to the bearer. The legal title follows the possession. Where there are several endorsers, having distinct interests, it has been held that, one of them may sue for the benefit of all, with their consent, because they are all interested in recovering from the maker. Chitty on Bills, p. 535, and cases cited.

All of these exceptions establish only the following principles: that an agent may sue in his own name, when he has the legal title, though in trust for another; when he has possession of the property in dispute; when he has a direct interest in the subject matter; and when he is a party to the contract. We know of no other exceptions, if these can be called exceptions, in all of which a legal title or interest rests in the plaintiff. In accordance with this view, is our own law. "An action can only be brought by one having a real and actual interest, which he pursues." Code of Practice, art. 15.

The plaintiff was not the holder of the note. He was not a party by endorsement. He was merely the general agent for the holder. He bought it, not for himself, but as agent of another. He was no party to the contract. He had no possession, with the right of protecting it. He had no *real and actual interest*, which we take to mean a pecuniary interest. He had not received the note even on the trial of the rule.

A case very similar to this is found in the New York Reports. A cashier of a bank had given up a note belonging to the bank, on receiving a check for an equal amount. The check was dishonored, and the cashier brought suit on the *note* in his own name. It was held that, the note was not novated by the check, but that the cashier could not maintain the suit in his own name. The court say: "It is not as agent, but as *holder* or assignee, that the plaintiff must show his right. In point of fact, the note never was transferred or assigned to him. If he had the actual possession of it, the court would not entertain an enquiry into his right, unless there was proof that he had obtained possession *malâ fide;* but the difficulty is, that the plaintiff has not the possession, nor a right to the note, by reason of any interest he has in it.

"The officer or agent cannot, without other authority than that arising out of his agency, prosecute on it, or for it, in his own name." *Alcott* v. *Rathbone*, 5 Wend. 494.

CONREY
*v.*
ELBERT.

So a party to a bill who has assigned it for value to a third person, cannot sue on the bill, although his responsibility as endorser remains. *Zacharie* v. *Black*, 3 Howard. *Blanchard* v. *Grousset*, 1 Ann. R. 96.

Hence, even an eventual guarantee by the plaintiff, if one were proved, would not entitle him to sue in his own name.

But let us for a moment concede that suit can properly be maintained in the name of the plaintiff. The question remains whether, by changing the name of the plaintiff of record, the condition of the defendant can be made worse. All the cases, whether on notes or otherwise, concur on this point. If the suit is permitted, in the name of an agent, but really for the benefit of a third person, the plaintiff is regarded as a nominal party; the party in interest is considered the true plaintiff. The permission of the law that such suits shall be brought, is given as a matter of convenience and in aid of commerce; but this permission is not allowed to destroy any right of the defendant. All defences that could be urged against the true plaintiff, can be made against the nominal party. *McNair* v. *Thompson*, 5 Mart. 561.

" No consequence results from it affecting the rights of the defendant, for he can offer every defence to the suit of the agent, he could present against the action of the principal. The agent can only be considered as the *nominal* plaintiff." *Lacoste* v. *De Armas*, 2 La. 265.

But are not the rights of the plaintiff increased by the change made in this case? Is not the defendant placed *in duriori casu?* If the Bank of Charleston had sued, confessedly the defendant could not have been arrested. But *P. Conrey, Jr.* brings the suit, and the defendant is imprisoned for three months.

There is no conceivable reason why this plaintiff should bring this suit, except to arrest the defendant. Our courts are open to the complaints of the Bank of Charleston; and, if the arrest had not been desired, the suit would have been brought in its name. The nominal party then exercises a right or privilege, which does not belong to the real party. The bank is permitted to do by its agent, more than it could do by itself.

True, the arrest is a remedy—a means of enforcing payment; but where the law prohibits an act to a particular person, can that person do the act prohibited, by the interposition of another? This would be a mere evasion. Nor do we understand the rule to be confined to pleadings and proofs on the merits. If there are collateral advantages or disadvantages, the court must look to the bottom of the transaction, and decide these, as well as the merits, according to the character or position of the *actual* parties. The nominal party must be set aside; and if a right is claimed, or defence urged, the enquiry must be, can this right be exercised by the *real party*—will the defence avail against him. If it can, the same rule will apply to the nominal party.

Rights and remedies are so blended, that it is often difficult to distinguish them. Hence the most intelligible and safest rule is, to say that the defendant shall not be injured by a change of plaintiffs. In this case he clearly sustains a serious injury in his personal restraint.

The counsel for the plaintiff admits that the defendant may plead against *Conrey* every defence that he could urge against the bank. "All that the defendant has a right to exact," says he, " and this is a right which never has, and never will be denied him, is that the transfer should not be permitted to operate prejudicially to any defence, which he would be authorised to set up against the bill, had the action been brought in the name of the corporation.

But if the suit had been so brought, the defendant could have set aside the arrest. He would have preserved his liberty, which was lost in the change of the *name* of the plaintiff, although the suit accrues only to the benefit of the bank. Is not this one of his defences, and has he not lost it by the change? *Rehearing refused.*